IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-05026-01-CR-SW-MDH |
| ) | |
| SERGIO DIAZ-ORTIZ, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Sergio Diaz-Ortiz moves to suppress any and all evidence and statements discovered as a result of a warrantless search and seizure of a motel room at the Microtel Inn in Joplin, Missouri that occurred on June 16, 2016.[1] (Doc. 46.) He further contends that any evidence or statements derived from the search and seizure should be suppressed as fruits of the poisonous tree. (*Id.*) On December 21, 2017, the undersigned held a hearing on the Motion to Suppress. (*See* Docs. 55 and 57.) Diaz-Ortiz appeared with his attorney, Darryl Johnson, and the Government was represented by Assistant United States Attorney Abram McGull. (*See* Doc. 57.) During the hearing, the Court received evidence and heard testimony from Ed Bailey, a detective with the Jasper County, Missouri Sheriff's Department and member of the Ozark Drug Enforcement Team ("ODET"); Travis Spencer, an officer with the Newton County, Missouri Sheriff's Department and member of ODET; William

---

[1] The specific evidence seized that Defendant seeks to suppress includes: one black case; three packages in brown tape; cash; a Beretta 9mm firearm; a wallet; a plastic clear container; black substance; bags of white substance; Apple iPhone A145635854105F0124208; Samsung flip phone A000004753770C; Apple Mactop A134X45123JKJF5W; Samsung Tablet sm-T350; cords to electronic devices; and colored pipe. (*See* Doc. 46.) As noted, Defendant also moves to suppress any evidence or statements derived from these seized items as fruits of the poisonous tree.

Pike, an officer with the Newton County, Missouri Sheriff's Department; and Colleen Peery, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") who works with ODET.  (*See* Doc. 57.)  After careful review of the record and for the reasons set forth below, it is hereby **RECOMMENDED** that Defendant Diaz-Ortiz's Motion to Suppress, (Doc. 46), be **GRANTED in part** and **DENIED in part**.

I. **Findings of Fact[2]**

On June 16, 2016, members of ODET executed a search warrant on the residence of Casey Simpson, a co-defendant in this case.  During the course of that search, law enforcement discovered methamphetamine.  Simpson then provided ODET with information about his source of methamphetamine.  Simpson provided a *Mirandized* statement to law enforcement that implicated co-defendant Justin Thurston as his source for the methamphetamine.

Under the direction of ODET and ATF, Simpson arranged for a purchase of methamphetamine from Thurston. During this interaction with Thurston, Thurston agreed to have some methamphetamine available and informed Simpson on where he needed to meet him in order to get additional methamphetamine.  Officers located Thurston and made contact with him at the location he provided to Simpson.  Thurston waived his *Miranda* rights and gave officers information that identified his methamphetamine supplier as an individual he knew as "Pedro" who was at the Microtel Hotel, located at 4101 Richard Joseph Blvd in Joplin, Missouri. He indicated that he had seen a large amount of methamphetamine in the room occupied by "Pedro" earlier in the day.  Thurston was then taken into custody.

The information Thurston provided led ATF and ODET to Microtel Inn and Suites located at 4101 Richard Joseph Boulevard, Room 239, Joplin, Missouri.  Through contact with

---

[2] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion.  The hearing transcript appears as Doc. 57.  The Government's exhibit index appears as Doc. 56. Defendant did not offer any exhibits at the hearing.

2

the hotel management, officers discovered the room had been rented by someone using the name Sergio Diaz-Ontiveros. Hotel management provided officers with a picture of the individual renting Room 239, which was sent to Thurston. Thurston identified the individual as the man he knew as "Pedro." While law enforcement was preparing the application for a search warrant of the Microtel, they were informed that Thurston had been released from custody. Law enforcement officers worried that Thurston would alert the man in Room 239 to the fact that the police were coming, and evidence would be destroyed as a result. Based on this fear and advice from a county prosecutor, members of ODET and ATF decided to make entry to the room at the Microtel and secure it. Officers then went to Room 239 at the Microtel Inn and knocked on the door. Upon hearing there was an occupant inside, an officer used a key card obtained from hotel management to open the door. Officers made immediate contact with Defendant Diaz-Ortiz. They explained to him that they were seeking a search warrant for Room 239 and were going to secure it until the warrant arrived. Diaz-Ortiz was detained and given his *Miranda* rights.[3] He implied that he did not wish to speak with the officers until he had a lawyer present. Officers admit that they had been talking with Diaz-Ortiz while keeping the room secure, but testified that they did not ask any guilt-seeking questions. However, officers did engage in conversation with Diaz-Ortiz, and at one point Diaz-Ortiz asked officers how much trouble he was in. Det. Bailey replied that it depended on whether it was a state or federal case.

    At some point after law enforcement officers had secured the room and were waiting for a warrant, Diaz-Ortiz told law enforcement officers that there were three pounds of

---

[3] There is some dispute among the officers regarding whether Diaz-Ortiz was handcuffed. Neither Det. Bailey nor Special Agent Peery could remember with any certainty whether Defendant was handcuffed. (*See* Doc. 57, pp. 8, 30-31, 36-37, 75.) However, Officer Pike seemed quite sure that Diaz-Ortiz was handcuffed from the point they secured the room until the execution of the search warrant. (*Id.*, pp. 66-67, 69.) As such, the evidence tends to show that it is more likely than not that Diaz-Ortiz was handcuffed shortly after officers entered Room 239 to secure it.

3

methamphetamine in the room. They assert that Diaz-Ortiz offered up the information regarding three pounds of methamphetamine spontaneously and unprompted.

A few hours after first entering Room 239, more officers arrived with the signed search warrant. Upon arrival of the search warrant, officers searched the room and found, among other things: approximately three pounds of methamphetamine, $10,331 in cash, a loaded handgun, and sample amounts of heroin and cocaine. Just before Diaz-Ortiz was transported to Newton County Jail, Diaz-Ortiz directly told ATF Special Agent Colleen Peery that he wanted to talk. While at the Newton County Jail, Special Agent Peery provided Diaz-Ortiz with *Miranda* waiver forms that he executed. Diaz-Ortiz then proceeded to explain to Special Agent Peery his role in the distribution of methamphetamine in the Western District of Missouri.

II. **Conclusions of Law**

In his brief, Diaz-Ortiz argues that the search of Room 239 was conducted without a search warrant. (*See* Doc. 46.) However, upon presentation of the evidence at the hearing, his arguments were slightly amended. (*See* Doc. 57.) Diaz-Ortiz contends that the warrantless entry into Room 239 was unlawful and therefore any evidence or statements obtained as a result of that entry should be suppressed, including evidence and statements resulting from the search pursuant to the warrant. The Government contends that the entry into Room 239 to secure it was lawful because exigent circumstances existed, specifically the risk that evidence would be destroyed. Additionally, it argues that the statements made by Diaz-Ortiz while the room was secured need not be suppressed because Diaz-Ortiz freely and voluntarily offered his statements after being read his *Miranda* rights. The parties' arguments are taken up below.

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. VI.; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir.

2005). Generally, any evidence found as a result of an unlawful warrantless entry, search, or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). However, searches conducted pursuant to established and well-delineated exceptions do not require a warrant and are thus not unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "Exigent circumstances may provide a basis for a warrantless entry." *United States v. Clement*, 854 F.3d 1116, 1119 (8th Cir. 1988) (citation omitted). This exception is narrowly drawn, but may allow for a warrantless entry into a place when there is a risk that evidence will be destroyed before a search warrant can be obtained. *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005) ("The risk that evidence will be destroyed during the time required to obtain a search warrant can be an exigent circumstance that justifies a warrantless entry."). "[T]he burden is on the state to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed." *Clement*, 854 F.3d at 1119 (quotation omitted); *see also Leveringston*, 397 F.3d at 1116 ("In evaluating whether a warrantless entry was justified by exigent circumstances, [courts] consider the circumstances that confronted the police at the time of the entry. . . . [and] apply an objective standard to evaluate the reasonableness of an assertion that exigent circumstances justified a warrantless entry.") (citation omitted); *United States v. Ramirez*, 676 F.3d 775, 760 (8th Cir. 2012) ("[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.") (quotation omitted).

In this case, exigent circumstances were not present in this case. The officers testified during the hearing that they believed a warrantless entry to secure the motel room was necessary because their informant had been released from custody. Specifically, they worried that this

5

informant, Simpson, would contact Diaz-Ortiz and warn him that law enforcement was coming, resulting in the destruction evidence before a warrant could be obtained. This evidence alone is not sufficient to show that there was an objectively reasonable justification for entering the room. The officers had no indication that the informant would contact Diaz-Ortiz. Instead, they merely feared that Simpson might contact Diaz-Ortiz and thus took the advice of the county prosecutor to enter and secure the room. In fact, it seems unlikely that Simpson would contact Diaz-Ortiz, whom he had just implicated, in order to tell Diaz-Ortiz that he had spoken with law enforcement and provided them with information about his location and drug operation.

In other cases where such a warrantless entry was upheld, courts were presented with more concrete evidence showing that that destruction of evidence would occur. *See Leveringston*, 397 F.3d at 1116 (the fact that water and the garbage disposal continued to run after a suspect had been arrested gave police grounds to believe that evidence "would be lost if they did not make immediate entry"); *United States v. Ball*, 90 F.3d 260, 262-63 (police approached home where two men were on the porch, one was holding a weapon and then fled into the residence); *Clement*, 854 F.2d at 1119-20 (upholding the lower court's decision finding exigent circumstances when officers received no response after knocking, saw someone approach the door, look through the peephole and retreat, and heard a "scrambling" noise). *Cf. Ramirez*, 676 F.3d at 760-62 (concluding that exigent circumstances did not exist when the only evidence presented to justify the entry was that the defendant attempted to shut the door after officers had unlawfully used a key card to access the hotel room once he became aware it was law enforcement). Here, there is no indication that Diaz-Ortiz was aware of law enforcement presence at the Microtel at any time prior to their entry into the room or that Diaz-Ortiz was attempting to destroy evidence when they knocked on the door. Mere anxiety that an informant

6

recently released from custody may contact the person he just implicated is not sufficient to show exigent circumstances existed. As such, the Government has failed to meet its burden to show that the inhabitant of Room 239 would imminently destroy evidence. *See Ramirez*, 676 F.3d at 760. Therefore, the warrantless entry into Room 239 was unlawful and the fruits derived as a result of that entry, specifically Diaz-Ortiz's apparently unprompted statement regarding the presence of methamphetamine in the room, should be suppressed.

However, the evidence discovered as a result of the search conducted pursuant to the warrant need not be suppressed because the independent source doctrine applies. Evidence discovered after a warrantless entry but pursuant to a warrant need not be suppressed if the warrant search was an independent source for that evidence. *Murray v. United States*, 487 U.S. 533, 537 (1988) (Evidence "obtained independently from activities untainted by the . . . illegality" need not be suppressed). Such evidence must be from a genuinely independent source, *United States v. Marts*, 986 F.2d 1216, 1221 (8th Cir. 1993), because courts have concluded that suppression is warranted in circumstances where "an [officers'] decision to seek the warrant was prompted by what they had seen during the initial entry or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542.

In this case, the evidence shows that the officers illegally entered the motel room. However, they only secured the room and did not conduct a search until they had a search warrant. The undisputed evidence shows that the warrant was obtained solely based on the information officers had gathered prior to the illegal entry into the room. Nothing from the illegal entry resulted in the application for the warrant, nor did any information obtained from the illegal entry form the probable cause basis for the warrant. Thus, "[b]ecause the information used to

7

obtain the search warrant was independent of the illegal entry and the illegal entry did not contribute to the discovery of the evidence seized under the warrant, the evidence should not be suppressed." *Marts*, 986 F.2d at 1221 (citing *Murray*, 487 U.S. at 537-38). Therefore, Diaz-Ortiz's Motion should be denied.

## III. Recommendation

For the reasons set forth above, the undersigned hereby **RECOMMENDS**: that Defendant Diaz-Ortiz's Motion to Suppress, (Doc. 46), be **GRANTED in part** and **DENIED in part**; and that Defendant's statements to officers after the warrantless entry, but before the execution of the search warrant, be **SUPPRESSED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: June 7, 2017